IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

TERRY A. SCHILLING                                                                    PLAINTIFF

V.                                             NO. 12-5098

CAROLYN W. COLVIN,[1]
Acting Commissioner of the Social Security Administration                    DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Terry A. Schilling, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security Act (Act).  In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  See 42 U.S.C. § 405(g).

Plaintiff filed his applications for DIB and SSI on October 6, 2009, alleging disability since March 30, 2009,[2] due to "Ptsd, anxiety, hep.c, carpul [sic] tunnel."  (Tr. 38, 133-134, 137-143, 176). An administrative hearing was held on September 14, 2010, at which Plaintiff appeared with counsel

---

[1] Carolyn W. Colvin, has been appointed to serve as acting Commissioner of Social Security, and is substituted as Defendant, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

[2] Plaintiff amended his onset date at the hearing from January 1, 2009 to March 30, 2009. (Tr. 38).

and he and his girl friend testified. (Tr. 32-66).

By written decision dated October 4, 2010, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe - hepatitis C, depression, and panic disorder without agoraphobia. (Tr. 22). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 23). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> lift/carry 20 pounds occasionally or 10 pounds frequently. In an 8-hour workday, he can stand/walk for 6 hours or sit for a total of 6 hours. The claimant has the use of his hands and feet for the operation of controls. He can have no repetitive overhead reaching. However, he can do such reasoning[sic]occasionally. There are no postural, manipulative, communicative, or environmental limitations. The claimant would be able to relate to coworkers and adapt to a work situation. Although he takes medications, he would be able to remain reasonably alert and carry out work assignments satisfactorily.

(Tr. 24). With the help of a vocational expert (VE), the ALJ determined Plaintiff was not capable of performing his past relevant work, but that there were other jobs Plaintiff would be able to perform, such as cashier, counter clerk, hand packager, and assembler. (Tr. 26-27). Plaintiff then requested a review of the hearing decision by the Appeals Council, which considered additional evidence, and denied the request on March 30, 2012. (Tr. 1-3). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 4). Both parties have filed briefs, and the case is now ready for decision. (Docs. 10, 11, 13).

I.    **Evidence Presented:**

Plaintiff was born in 1956 and completed one year of college. (Tr. 173, 181). A report by

the Veteran's Administration (VA) hospital, dated January 20, 2009, indicates that Plaintiff separated from his wife in March of 2008, was laid off from work and hoped to receive unemployment soon. (Tr. 295). Plaintiff had previously been diagnosed with hepatitis C, and had started treatment through the Hepatitis C Clinic for such, but stopped his treatment in October 2007, because it was making him too sick. (Tr. 295). As of January 20, 2009, he had not restarted the treatment. Also at that time, Plaintiff smoked about a half a pack of cigarettes daily, an did not want to try to stop. (Tr. 295). He had been a heavy drinker until a few years prior, and when he quit, his anxiety attacks started. (Tr. 295). Plaintiff was worried about losing everything. (Tr. 298).

On March 9, 2009, Plaintiff was seen by Dr. Robert B. Stilwell at the VA, and reported that he had moved in with a girlfriend to live. (Tr. 258). At that time, he was taking six Lorazapam daily, and was doing well with it. (Tr. 258). He was smoking about a pack of cigarettes a day at that time, and did not want to quit. (Tr. 259). Plaintiff reported that the reason he previously stopped drinking was because he wanted to be okay around his grandson. (Tr. 259). Plaintiff was assessed with:

> Panic disorder
> Recovery from alcoholism
> GAF 49

(Tr. 260). Dr. Stilwell also noted in the report: "He clearly chooses to use meds as he thinks he should rather than as prescribed." (Tr. 260). Dr. Stilwell noted the different medications Plaintiff had stopped taking, and the fact that he declined trazodone. (Tr. 260). Dr. Stilwell also reported that he "AGAIN" recommended aerobic exercise, but Plaintiff had not started yet. (Tr. 261). He gave Plaintiff a GAF score of 49. (Tr. 261).

On March 18, 2009, a VA report indicated that Plaintiff had hepatitis C, but had elected not

to treat that through the Hepatitis C Clinic at that time. (Tr. 279). Plaintiff was noted as taking herbs at that time. (Tr. 280). On March 31, 2009, a CT of Plaintiff's thorax revealed the following:

> 1. No interval change in the size or appearance of multiple noncalcified subcentimeter nodules in both lungs since the CT examination performed in December 2006. This indicates that these are most likely benign nodules.
>
> 2. No interval change in the size of multiple groupings of small lymph nodes that are seen in the right retrocrural space, region of the gastric cardia and left side of the retroperitoneum when compared to a CT of the abdomen from 8/21/06. These are, therefore, most likely of no clinical significance.

(Tr. 241).

In an April 1, 2009 VA record, Plaintiff again refused treatment at the Hepatitis C Clinic and stated that he wanted to try further "herbal tx" and recheck his viral load in three months. (Tr. 279). On April 24, 2009, Plaintiff presented to the VA Hepatitis Clinic, reporting that he had suicidal ideations in December, due to stress. (Tr. 273).

On September 4, 2009, Plaintiff presented to the VA, and at that time, was still smoking one pack of cigarettes per day. (Tr. 262).

A VA report dated October 9, 2009, indicated that Plaintiff suffered from depression, but was not then on medication for depression - he had been on prozac and it gave him headaches. (Tr. 254).

On December 4, 2009, a Mental Diagnostic Evaluation was performed by Jeanne H. Curtis, Psy.D. (Tr. 304-308). In the evaluation, Dr. Curtis diagnosed Plaintiff as follows:

>     Axis I:      Alcohol Dependence, Sustained Full Remission
>                  Panic Disorder Without Agoraphobia
>                  Major Depressive Disorder, Single Episode, Moderate
>     Axis II:     799.9
>     Axis V:      GAF - 55-65

(Tr. 307). Dr. Curtis found that Plaintiff reported and demonstrated the capacity to communicate and interact in a socially adequate, intelligible and effective manner, that he demonstrated and

reported the capacity to cope with the mental/cognitive demands of basic work-like tasks, stating that his medication "calms me down," that he demonstrated minimal difficulty with concentration on the cognitive tasks of the evaluation, and stated that he was able to concentrate on basic tasks until they were completed if he was interested in them, was persistent on the evaluation, and that he responded at an adequate pace during the evaluation and within an acceptable time frame. (Tr. 207-208).

On December 11, 2009, a General Physical Examination was performed by Dr. Randy Conover, D.O. (Tr. 310-314). Dr. Conover diagnosed Plaintiff with PTSD, Hepatitis C, CTS, back pain, CAP, emphysema, H/A, depression, and anxiety. (Tr. 314). He further found that Plaintiff could see, hear and speak, that he was moderately limited in his ability to walk, stand, lift, and carry, and was mildly limited in his ability to sit, handle, and finger. (Tr. 314).

On December 15, 2009, the VA reported that Plaintiff was taking six Lorazapam daily and did well with it. (Tr. 365). He was also noted as still smoking about 8 cigarettes daily, and did not want to try to stop at that time. (Tr. 365).

On December 15, 2009, a Mental RFC Assessment was completed by Cheryl Woodson-Johnson, Psy.D. (Tr. 315-318). Dr. Woodson-Johnson found that Plaintiff was able to perform work where interpersonal contact was routine but superficial, e.g. grocery checker; complexity of tasks was learned by experience, with several variables, and judgment was within limits; and where supervision required was little for routine but detailed for non-routine (semi-skilled). Dr. Woodson-Johnson also completed a Psychiatric Review Technique form on the same date, and found that Plaintiff had moderate degree of limitation in difficulties in maintaining social functioning and had a mild degree of limitation in restriction of activities of daily living and difficulties in maintaining concentration, persistence, or pace, and had no episodes of decompensation. (Tr. 329).

On December 29, 2009, Dr. Lucy Sauer, a non-examining consultant, completed a Physical RFC Assessment. (Tr. 333-340). Dr. Sauer found that Plaintiff was able to perform light work with certain upper extremity limitations. (Tr. 340).

On December 30, 2009, Plaintiff returned to the VA, complaining that he was not doing well on Prozac, and stopped taking it on Monday. (Tr. 359).

On February 2, 2010, Plaintiff presented to the VA for treatment of depression and anxiety. He was diagnosed as follows:

>       Axis I:     311, 300.00
>       Axis II:    799.9
>       Axis III:   See problem list
>       Axis IV:    Interpersonal, occupational
>       Axis V:     Last GAF Score 49

(Tr. 345). Plaintiff expressed numerous problems relating to health, money, and having been "wronged by others." (Tr. 346). He also expressed great apprehension with regard to his employment opportunities. (Tr. 346). He was still smoking about a half a pack of cigarettes daily, and did not want to try to stop. (Tr. 348). Plaintiff was assessed with panic disorder, recovery from alcoholism, and given a GAF score of 49. (Tr. 349).

At the hearing, Plaintiff testified that he had problems lifting and carrying objects and that his back pain radiated - he had trouble with his left shoulder and right leg turning numb often. (Tr. 43). He testified that he did some housework, could vacuum a room at a time, could handle personal care, and did some driving. (Tr. 46-47). He stated that he had some breathing problems and used Albuterol inhaler, and had been able to cut back from smoking a full pack of cigarettes a day to a half a pack. (Tr. 47). He stated that he had problems standing for extended periods of time. (Tr. 40). He testified that he had panic attacks probably two or three times a day. (Tr. 51). He also testified

that he took Lorazapam, which "seems to be a pretty good medication." (Tr. 52). "It helps keep it in check." (Tr. 52). The only drawback for him was that it kept him "fairly well drowsy and doped up." (Tr. 52).

**II.     Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable

clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity (RFC). See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

**III.    Discussion:**

Plaintiff raises the following arguments on appeal: 1) Plaintiff has additional severe impairments; 2) The ALJ did not analyze plaintiff's credibility appropriately; 3) The ALJ's RFC determination is improper; and 4) Plaintiff cannot perform the jobs identified in the ALJ's decision. (Doc. 10).

    **A.    Severe Impairments:**

An impairment is severe within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 1520(a)(4)ii), 416.920(a)(4)(ii). An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more

than a minimal effect on an individual's ability to work. 20 C.F.R. § § 404.1521, 416.921. The Supreme Court has adopted a "de minimis standard" with regard to the severity standard. Hudson v. Bowen, 870 F.2d 1392, 1395 (8th Cri. 1989).

Plaintiff contends that his left shoulder pain and carpal tunnel syndrome are severe impairments. With respect to Plaintiff's left shoulder pain, the ALJ stated that the records do not give the etiology of this impairment and therefore regarded it as being medically nondetermined. (Tr. 22).

The Court first notes that Plaintiff did not allege shoulder pain as a disabling impairment, which is significant. (Tr. 176). See Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001). The Court also notes that in his Pain and Other Symptoms report, Plaintiff did not mention shoulder pain - he indicated that his pain was located in his arm, neck, lower back, and abdomen. (Tr. 192). In his general physical examination report, Dr. Conover found the range of motion in Plaintiff's shoulders to be 145 degrees, rather than the normal 150 degrees, but only assessed Plaintiff with moderate limitations in lifting and carrying and mild limitations in his ability to handle and finger. (Tr. 312, 314). Dr. Conover did not diagnosis Plaintiff with any shoulder impairment. The Court therefore believes that Plaintiff's left shoulder had no more than a minimal effect on Plaintiff's ability to work.

With respect to Plaintiff's carpal tunnel syndrome, in his decision, the ALJ stated that carpal tunnel syndrome was listed in a VA problem list of the claimant's impairments. (Tr. 22). However, he also stated that "neither the VAMC reports nor other medical records support a finding of the condition being a severe impairment that would inhibit or prevent his performance of basic work activities. Therefore, his carpal tunnel syndrome is considered here to be a non-severe impairments."

(Tr. 22-23).

In his general physical examination report, Dr. Conover reported that the range of motion in Plaintiff's wrists bilaterally was mildly reduced form a normal flexion of 0 to 60 degrees, to 0 to 50 degrees. (Tr. 312). Dr. Conover also noted that Plaintiff could not touch his thumbs to his palms, but otherwise, he could hold a pen and write; oppose thumb to finger; pick up a coin; and retained eight-five percent of his normal grip strength. (Tr. 313).

The ALJ addressed Plaintiff's allegation that his grip was weak and that he often dropped things:

> Yet, in a physical evaluation, he was determined to have 85% of a normal right grip and 80% of a normal left grip. In the same examination, he demonstrated having all but 5 degrees of the full range of shoulder motion despite allegations of shoulder pain. He was also within 5-10 degrees of the full range of motion for his cervical and lumbar spine (Exhibit B5F, pgs. 4-5). Mr. Schilling has faulted his hepatitis C for fatiguing him. Yet, in a VAMC progress note, he said he stopped taking his hepatitis treatment in October 2007. He said in the report that he thought his liver was "okay" (Exhibit B9F, p.8). He is therefore, saying both that his hepatitis is a problem because if fatigues him but, also, that is not enough of a problem for him to take medication for it. The VAMC records from 2009-2010 appear to support the view that the hepatitis is not a major issue as no record of treatment for hepatitis appears in them (Exhibit B9F).

(Tr. 26).

Based upon the foregoing, the Court finds there is substantial evidence to support the ALJ's findings that Plaintiff's left shoulder pain and carpal tunnel syndrome were not severe impairments.

**B.     Credibility Findings:**

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4)

dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

In his decision, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (Tr. 25). However, he also found that Plaintiff's statements concerning the intensity, persistence and limiting effects of Plaintiff's symptoms were not credible to the extent they were inconsistent with his RFC assessment. (Tr. 25-26). The ALJ addressed Plaintiff's daily activities, stating that Plaintiff had only mild restriction of his daily activities. (Tr. 23). He further noted that an examining psychologist opined that Plaintiff was generally capable of performing activities of daily living autonomously. (Tr. 23). The Court notes that in her mental diagnostic evaluation, Dr. Curtis reported that Plaintiff stated that he drove only on close, familiar routes, did not do his own shopping, handled his personal finances, did not participate in social groups other than AA, and was generally capable of performing activities of daily living autonomously. (Tr. 307). In his Function Report - Adult, dated October 17, 2009, Plaintiff indicated that he had no problems with personal care, prepared his own meals, such as sandwiches and frozen dinners, and that since his wife left him, he did all of the house and yard work in moderation. (Tr. 195-196). He also reported that he walked, drove a car, shopped for groceries, car parts, and clothing. (Tr. 197).

It is clear from the record that Plaintiff repeatedly refused to accept VAMC staff

recommendations, and as noted by Defendant, other than the use of herbal measures, there is no indication in the record that Plaintiff restarted the Hepatitis treatment program. (Tr. 270, 279-280). See Brown v. Barnhart, 390 F.3d 535, 540-541 (8th Cir. 2004)("Failure to follow a prescribed course of remedial treatment without good reason is grounds for denying an application for benefits.").

Based upon the foregoing as well as the reasons given in Defendant's well stated brief, the Court finds there is substantial evidence to support the ALJ's credibility findings.

**C.    RFC Assessment:**

RFC is the most a person can do despite that person's limitations. 20 C.F.R. §404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own description of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "The ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

The ALJ determined that Plaintiff could perform light work with certain limitations, including having no repetitive overhead reaching. (Tr. 24). The ALJ gave great weight to the consultative evaluations of Dr. Curtis and Dr. Conover, as well as the Physical RFC assessment of Dr. Lucy Sauer and Mental RFC Assessment of Cheryl Woodson-Johnson. (Tr. 26). He concluded

that the limitations contained in the assessments appeared in Plaintiff's residual functional capacity. (Tr. 26). The ALJ was correct in stating that the information contained in the evaluations was not contradicted elsewhere. The Court agrees, and finds there is substantial evidence to support the ALJ's RFC findings.

    **D.**    **Past Relevant Work:**

At the hearing held before the ALJ, the VE testified that Plaintiff would not be able to perform his past work, but that he would be able to perform the jobs of cashier, counter clerk, hand packager, and assembler. (Tr. 27). The ALJ gave the VE a lengthy hypothetical question that set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. See Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court believes that the VE's responses to the hypothetical question constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude him from performing other work as a cashier, counter clerk, hand packager, and assembler. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from VE based on properly phrased hypothetical question constitutes substantial evidence).

Based upon the ALJ's RFC findings, which this Court believes to be supported by substantial evidence, along with the testimony of the VE, the Court is of the opinion that substantial evidence supports the ALJ's finding that there were jobs Plaintiff could perform.

    **IV.**    **Conclusion:**

Accordingly, having carefully reviewed the record, the Court finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed. The undersigned further finds that Plaintiff's Complaint should be, and is hereby,

dismissed with prejudice.

      IT IS SO ORDERED this 17th day of July, 2013.

                                                      */s/ Erin L. Setser*
                                                      HON. ERIN L. SETSER
                                                      UNITED STATES MAGISTRATE JUDGE